UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

WLODZIMIERZ J. DZWONCZYK,

                                        Plaintiff,

          -v.-                                              5:08-CV-00557
                                                            (NPM/DEP)
SYRACUSE CITY POLICE
DEPARTMENT; SYRACUSE HOUSING
AUTHORITY SECURITY; JOHN DOE,
SYRACUSE HOUSING AUTHORITY
DETECTIVE; GARY MIGUEL, CHIEF
OF POLICE, SYRACUSE CITY POLICE
DEPARTMENT; ONONDAGA COUNTY
SHERIFF'S OFFICE; ONONDAGA
COUNTY JUSTICE CENTER; JOHN
DOES, IN THEIR OFFICIAL AND
INDIVIDUAL CAPACITIES,

                                        Defendants.

APPEARANCES:

FOR THE PLAINTIFF:

Wlodzimierz J. Dzwonczyk, pro se

FOR THE DEFENDANTS,
Syracuse City Police Department;
Gary Miguel, Chief of Police,
Syracuse City Police Department;
and John Does, in their official and
individual capacities:

City of Syracuse Corporation Counsel        Rory A. McMahon
233 East Washington Street

Room 301 City Hall
Syracuse, NY 13202

FOR THE DEFENDANTS,
Syracuse Housing Authority Security;
and John Doe, Syracuse Housing
Authority Detective:

Sliwa & Lane                                        Paul F. Murak
840 Main-Seneca Building
237 Main Street
Buffalo, NY 14203-2715

FOR THE DEFENDANTS,
Onondaga County Sheriff's Office;
Onondaga County Justice Center; and
John Does:
Gordon J. Cuffy, Onondaga County
 Attorney                                           Karen A. Bleskoski
421 Montgomery Street
10th Floor
Syracuse, NY 13202


Neal P. McCurn, Senior District Judge


*__Memorandum, Decision and Order__*

## *I.  Introduction*

     Presently before the court in this civil rights action are two dispositive
motions.  Defendants Onondaga County Sheriff's Office, Onondaga County
Justice Center and John Does (collectively, "the County Defendants") move to
dismiss the complaint filed by plaintiff, Wlodzimierz J. Dzwonczyk ("Plaintiff")
for failure to state claims against them upon which relief may be granted pursuant

to Fed. R. Civ. P. 12(b)(6).  See Dkt. No. 16.  Defendants Syracuse City Police Department ("SPD"); Gary Miguel, Chief of Police, Syracuse City Police Department ("Miguel"); and John Does (collectively, "the City Defendants") move for judgment on the pleadings in their favor pursuant to Fed. R. Civ. P. 12(c).  See Dkt. No. 37.  Plaintiff opposes both motions.  No reply having been filed by the County Defendants, and the City Defendants having informed the court of their intent not to reply, both motions are fully briefed.  Decision regarding the motions is on the papers submitted, without oral argument.

## II.  Procedural Background

Plaintiff, appearing pro se, filed a complaint against the County Defendants and City Defendants as well as defendants, Syracuse Housing Authority Security and John Doe, Syracuse Housing Authority Detective (collectively, "SHA Defendants"), alleging the violation of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution as predicates for civil rights claims pursuant to 42 U.S.C. § 1983, as well as several New York common law tort claims, stemming from events surrounding Plaintiff's arrest and detention for aggravated harassment on or about May 23, 2008.  The City Defendants and SHA Defendants thereafter answered the complaint, while the County Defendants filed a pre-answer motion to dismiss.  The City Defendants' motion for judgment on the pleadings followed.

## III.  Legal Standard

The standard to be applied when deciding a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is identical to that of a motion to dismiss for failure to state claims upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).  See Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.

3

1994).  When deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court must accept the allegations of fact in the complaint as true, drawing all reasonable inferences in the plaintiff's favor.  See World Religious Relief, Inc. v. Sirius Satellite Radio, Inc., No. 05-CV-8257, 2007 WL 2261549, at *1 (S.D.N.Y. Aug. 7, 2007) (quoting Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.1994)). Additionally, when deciding such a motion, the court may only consider "the factual allegations in the complaint, [...] documents attached to the complaint as exhibits or incorporated by reference, [...] matters of which judicial notice might be taken, and [...] documents either in plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit."  Muller-Paisner v. TIAA, 446 F.Supp.2d 221, 226-227 (S.D.N.Y.2006) (citing Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir.1993) (internal citations omitted)) (rev'd in part on other grounds, No. 06-4307-cv, 2008 WL 3842899 (2d Cir. Aug. 15, 2008).  Particularly relevant here, an arrest report is a matter of public record that may be considered on a Rule 12(b)(6) motion to dismiss.  See McCloud v. Cutler, No. 06-CV-6443, 2008 WL 906701, at *1 n.2 (E.D.N.Y. Apr. 3, 2008) (citing Vasquez v. City of New York, No. 99 Civ. 4606(DC), 2000 WL 869492, at *1 n.3 (S.D.N.Y. June 29, 2000)).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the complaint includes "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).[1]  The Court of Appeals for the Second Circuit has

---

[1] By its opinion in Bell Atlantic, the Supreme Court abrogated the often-cited language of Conley v. Gibson  "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

interpreted the foregoing language to require that lower courts apply "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible [,]" but does not require a heightened pleading standard for civil rights claims.  Iqbal v. Hasty, 490.3d 143, 157-58 (2d Cir.2007) (emphasis in original).

        Finally, the court is mindful of the well-established principle that a pro se litigant's papers are to be construed liberally, especially when civil rights violations are alleged.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 ( 2d Cir. 2008) (internal citations omitted).  Thus, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Boykin v. KeyCorp,  521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson v. Pardus, ---U.S. ----, 127 S.Ct. 2197, 2200 (2007) (per curiam)).  Accordingly, the court must interpret Plaintiff's "submissions to raise the strongest arguments that they suggest."  Diaz v. United States, 517 F.3d 608, 613 (2d Cir. 2008) (internal quotation and citation omitted).  Further, "when reviewing pro se submissions, a district court should look at them 'with a lenient eye, allowing borderline cases to proceed.'"  Phillips v. Girdich, 408 F.3d 124, 127 -128 (2d Cir. 2005) (quoting Fleming v. United States, 146 F.3d 88, 90 (2d Cir.1998) (per curiam).  Thus, courts have held it appropriate to consider assertions in a pro se plaintiff's papers in opposition to a motion to dismiss to

---

would entitle him to relief." 550 U.S. 544, ----, 127 S.Ct. 1955, 1968 (2007) (quoting Conley, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)).  In doing so, the Court found that Conley "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  Id., at 1969.

effectively amend the allegations of the complaint, to the extent such assertions are consistent with the allegations of the complaint.  See Robles v. Bleau, No 9:07-CV-0464, 2008 WL 4693153, at *6 (N.D.N.Y. Oct. 22, 2008) (citations omitted).

At the same time, the court is mindful that, according to Second Circuit precedent, it

> cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, . . . [and it] should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law[.]

Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (internal citations and quotations omitted).  Accordingly, the court notes that it "is not obliged to reconcile [a pro se] plaintiff's own pleadings that are contradicted by other matter asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint."  Koulkina v. City of New York, 559 F.Supp.2d 300, 314 (S.D.N.Y. 2008) (internal citation omitted).  Thus, where such contradiction exists, the pro se plaintiff's allegations "are insufficient to defeat a motion to dismiss."  Id.

### IV.  Factual Background

The court will, as it must, accept the following allegations of fact in the Plaintiff's complaint ("the Complaint") as true, drawing all reasonable inferences in Plaintiff's favor.  See supra, at 4.

On or about May 18, 2008, Plaintiff sent a "Letter of Trespass Notice" to

one Daniel Bebber.[2]  Mr. Bebber is apparently employed as a delivery person at a local pharmacy.  At one time Mr. Bebber delivered medications to Plaintiff as well as to Plaintiff's parents, through which association Plaintiff and Mr. Bebber became acquainted.

On May 23, 2008, Plaintiff was arrested at his residence for aggravated harassment.  It is unclear from the complaint the exact number of arresting officers, but Plaintiff alleges that an officer or officers from both SPD and Syracuse Housing Authority Security were involved.  Specifically, Plaintiff alleges that the "Syracuse Police Department and Syracuse Housing Authority Security came to [his] residence . . . with two police officers[;] . . . [o]ne was a detective working for the Syracuse Police Department and Syracuse Housing Authority Security, . . . [and] the other was in the police uniform ... ."  Compl. ¶ 13.  Plaintiff alleges a "Detective" entered his residence, showed him "the Letter of Trespass Notice" and accused him of aggravated harassment, then arrested Plaintiff by putting handcuffs on his wrists.  See id. ¶¶ 15, 16.  It should also be noted that Plaintiff contends the Syracuse Housing Authority Security arrested him in retaliation for litigation he filed in this court, alleging violations of his rights under the Fair Housing Act.  See Compl. ¶ 50.[3]

---

[2] Although Plaintiff refers to Mr. Bebber as "Daniel Beber" throughout the Complaint and opposition papers, the court will adopt the spelling of Mr. Bebber's surname as is reflected in his own statement regarding the circumstances supporting Plaintiff's arrest, to be discussed infra.

[3] Ostensibly, Plaintiff refers to Dzwonczyk v. Syracuse Housing Authority, et al., 5:07-cv-01239.  The court notes, however, that Plaintiff previously filed another action against the Syracuse Housing Authority, alleging violations of, among other things, the Fair Housing Act, which was dismissed by stipulation of the parties on December 13, 2004.  See Dzwonczyk v. Syracuse Housing Authority, et al., 5:04-cv-01198.

Plaintiff alleges he was not read his "Miranda rights," and that the Detective would not let Plaintiff put on his socks or notify his mother that he was leaving prior to defendants removing him from his residence.  See id. ¶ 16.  Plaintiff further contends the "Detective grabbed [him] and literally dragged him to the elevator" and gave him "little pushes . . . here and there" while defendants transported Plaintiff to the police car.  See id.  Finally, Plaintiff claims that at some point he was "thoroughly searched still without Miranda rights read."  Id.

In his papers in opposition to the City Defendants' motion for judgment on the pleadings, Plaintiff expands upon the allegations in the Complaint regarding his arrest.  Plaintiff contends that he was arrested without a warrant, and that he "did not really give the consent to enter because [he] was under the impression that the [C]ity [D]efendants . . . were coming to update [him on another matter]."  Pl.'s Mem. of Law in Opp'n to City Defs.' Mot. for J. on the Pleadings, at 12, Dkt. No. 64.  Also in his opposition papers, regarding his allegation that the Detective "literally dragged him to the elevator," Compl. ¶ 16, Plaintiff contends that he "did not sustain any serious injuries as it is about 7 feet . . . from [his] apartment to the elevator[] except wrists, but it has been 5 months so they healed," Pl.'s Mem. of Law in Opp'n to City Defs.' Mot. for J. on the Pleadings, at 12.

According to the arrest report, Plaintiff was arrested at his residence and was charged with second degree aggravated harassment pursuant to N.Y. Penal Law § 240.30.  See Ex. A to Mem. of Law in Supp. of Mot. for J. on the Pleadings, Dkt. No. 39.  The Syracuse Housing Authority is identified on the arrest report as the victim.  See id.  The arresting officer, who is identified as "Kiefer," noted on the arrest report that Plaintiff was "transported to justice center without incident." Id.

8

Attached to the arrest report is an incident report, signed by "Theodore Kiefer", naming "Daniel Bebber" as the victim, and Plaintiff as the suspect.  Id.  Also attached to the arrest report is a statement by Mr. Bebber, wherein he alleges receiving several telephone calls and mailings from Plaintiff over the previous two months, which continued despite Mr. Bebber's repeated requests, via the Syracuse Police Department, that Plaintiff cease contact with Mr. Bebber, and which caused Mr. Bebber and his wife to be annoyed and alarmed.  See id.  According to Mr. Bebber, on one occasion, about one week after Plaintiff was first asked to stop contacting Mr. Bebber, Plaintiff came to his house uninvited.  Finally, Mr. Bebber states that he received a letter from Plaintiff informing him that he "was no longer allowed on Syracuse Housing property, specifically [Plaintiff's] building."  Id.  In light of the fact that a similar letter was sent to Mr. Bebber's employer, coupled with Plaintiff's repeated telephone calls and mailings despite having been asked to stop, Mr. Bebber asked that Plaintiff be prosecuted "to the fullest extent of the law."  Id.

Kiefer's narrative attached to the arrest report indicates that he received Bebber's complaint of harassment against Plaintiff on May 19, 2008.  See id.  Kiefer notes that prior to that date, Mr. Bebber twice asked him to speak with Plaintiff on Bebber's behalf, which Kiefer did and twice received Plaintiff's assurances that the unwanted communications would stop.  See id.  Thereafter, Plaintiff sent the notice of trespass letter to Mr. Bebber, regarding which Kiefer states that Plaintiff "claim[ed to have] the Syracuse Housing Authority's permission to issue such a letter ... ."  Id.  Kiefer states that on May 23, 2008, he, "while working in a part time capacity as an investigator within the [Syracuse] Housing Authority, responded to [Plaintiff's apartment] to locate [Plaintiff]."  Id.

9

According to Kiefer, he was accompanied by "Officer Chimileski and Det. Rood."
Id. Kiefer concluded his narrative report as follows:

> [Plaintiff] was in fact located at his residence and arrested for
> Aggravated Harassment in the 2nd degree. Due to the strong
> likelihood of reoccurrence, [Plaintiff] was lodged at the Justice
> Center. IT SHOULD BE NOTED THAT THE LETTER OF
> TRESPASS generated by [Plaintiff] has/holds NO merit and should
> be considered a fraud as he invoked the authority, without
> permission, of the Syracuse Housing Authority's security division.

Id.

Kiefer then drafted a misdemeanor information, which he provided to the
City of Syracuse Criminal Court, complaining that [Plaintiff], from March 2008
through May 19, 2008, "with intent to harass, annoy[,] threaten or alarm another
did communicate with the victim, by mail in a manner likely to cause annoyance
or alarm." Id. Among other things, the information also alleges that Plaintiff "did
purport to be a representative of Syracuse Housing Authority when in fact he is
not." Id. The letter of trespass notice, which is identical to that attached to the
Complaint, also accompanies the arrest report. See id.; Ex. A to Compl.

The letter, which is titled, "LETTER OF TRESPASS NOTICE," indicates
that Mr. Bebber is "no longer allowed in or around the premises of [Plaintiff's
home] for any reason whatsoever." Ex. A to Compl. The letter further indicates
that should Mr. Bebber be "seen in or around the premises" he "will hereafter be
considered as a 'TRESPASSER' and the Syracuse Police will be called to
ARREST [him]." Id. Through said letter, Plaintiff also informs Mr. Bebber that a
copy of same "is being sent to the Syracuse Police Department, the Security of
Syracuse Housing Authority, and to [Mr. Bebber's] employer, for their
information." Id. The letter is signed by Plaintiff, under which signature appears

that the Syracuse Police Department and Security of Syracuse Housing Authority have been copied.  Beneath same appears the following language: "Provided Courtesy of Syracuse Police Department Updated on 04/16/2006".  Id.  The letter also appears to be notarized, and is dated May 19, 2008.

Returning to the allegations in the Complaint, it is clear that at some point after his arrest, Plaintiff arrived at the "Onondaga County Jail" where he was booked, searched and "placed in a group cell."  Compl. ¶ 17.  While in the group cell, Plaintiff witnessed one prisoner assault another, while the "County Jail officers . . . watch[ed] without any reaction."  Id. ¶ 18.  Before the assailant was removed from the cell, he "asked Plaintiff if he had panties", which caused Plaintiff to "fear[] very much for his safety."  Id.

Plaintiff also describes being strip-searched prior to receiving "prisoner's clothing".  ¶ 20.  According to Plaintiff, he was told to "get completely undressed, including his underwear."  Id.  Plaintiff agreed to undress, but requested the presence of two male officers.  When the second officer arrived, the first officer explained that "Plaintiff did not want to fulfill his request to undress, and was uncooperative."  Id.  After Plaintiff undressed, one of the officers used vulgar language, instructing Plaintiff to "'bring up his balls', and 'spread up his ass'", which caused Plaintiff to feel "humiliated, hurt, [and] deprived of his dignity as a human being."  Id.  In his papers in opposition to the County Defendants' motion to dismiss, Plaintiff alleges that "defendants searched [him] thoroughly twice without probable cause, and . . . subjected [him] to [an] absolutely unwarranted alcohol level check."  Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss, at 14, Dkt. No. 20.

Finally, in the Complaint, Plaintiff describes his lack of access to food,

11

drink and medicine while he was incarcerated.  Plaintiff alleges that "he had a bruised rib, and was in pain."  Compl. ¶ 17.  See also ¶¶ 19, 21.  Plaintiff also alleges he "was supposed to take Tylenol with Codeine, which he was never given[]" and that "[h]e was not given his other medication."  Id.  To be sure, Plaintiff does not specify the cause of the bruised rib, nor does he allege that he informed anyone of his injury, or that he asked anyone for any medication.  However, later in the Complaint, Plaintiff contends that "his medical concerns were not addressed at all" and that "[e]xcept one person, nobody addressed Plaintiff's medical concerns."  ¶ 21.  Plaintiff also alleges that "[h]e was held without drink and food[,]" ¶ 19, but later in the Complaint claims that he was given breakfast, see ¶ 22.

Finally, it appears from the allegations in the Complaint that Plaintiff was held overnight at the Justice Center, and was released without bail the following day.  See ¶¶ 21, 24.

## V.  Discussion

A fair reading of the Complaint reflects that Plaintiff purports to allege a number of constitutional violations as predicates for civil rights claims pursuant to 42 U.S.C. § 1983, as well as several tort claims under New York common law.  Specifically, under Count I of the Complaint, Plaintiff contends that all defendants (hereinafter "Defendants") violated the following of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution: (1) right to be free from unreasonable searches and seizures; (2) right not to be deprived of due process; (3) right to be free from excessive force; (4) right to be free from false arrest, and (5) "negligence."  See Compl. ¶ 28.  Plaintiff further claims that he is due punitive damages regarding the aforementioned violations.  See id. ¶ 31.

Through Count II of the Complaint, Plaintiff contends that the defendant, Detective "John Doe" was deliberately indifferent to Plaintiff's right to be free from excessive force and unreasonable searches and seizures in violation of the Fourth and Fourteenth Amendments.  See id. ¶ 33.  Under Count III, Plaintiff alleges that Defendants violated his rights under the Fourth, Fifth and Fourteenth Amendments by falsely arresting him without a "basis in fact to do so" and "without reading to Plaintiff [his] Miranda rights."  Compl. ¶ 36.  Count IV, labeled False Imprisonment, includes the allegations that Defendants "breached a duty of care owed to Plaintiff" to not deprive him of his personal liberty by restraining or detaining him without just cause, through use of force, and without reading Plaintiff his Miranda rights.  See id. ¶¶ 39-41.  Counts V, VI and VII allege claims for negligence, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED"), respectively, against all defendants.  See id. ¶¶ 44-48.  Finally, it should be noted that Plaintiff alleges that Chief Miguel "is responsible for the promulgation, and implementation of police procedures and practices among police officers of Syracuse City Police Department, sued herein as John Does, which officers include members of the Onondaga County Sheriff's Office ... ."  Compl. ¶ 51.

### A.  Claims Pursuant to 42 U.S.C. § 1983

It is well settled that in order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state ... law."  Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005) (quoting Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920 (1980) (internal quotations omitted)).  "Section 1983 is not itself a source of substantive rights[,] but merely provides a method for

14

vindicating federal rights elsewhere conferred[.]" <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 225 (2d Cir. 2004) (<u>quoting</u> <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689 (1979)).

### *1.  Negligence Under 42 U.S.C. § 1983*

As an initial matter, the court notes that to the extent Plaintiff purports to allege a negligence claim against the Defendants under 42 U.S.C. § 1983, such a claim is dismissed as negligence is not cognizable under § 1983.  <u>See</u> <u>Resto v. Weissmane</u>, No. 9:08-CV-340, 2008 WL 5191733, at *4, n.3 (N.D.N.Y. Dec. 10, 2008); <u>Perez v. Crook</u>, No. 9:08-CV-1153, 2008 WL 4891167, at *3 (N.D.N.Y. Nov. 10, 2008).

### *2.  Miranda*

It is clear Plaintiff intends to allege a claim for the violation of his right against self-incrimination due to Defendants' failure to read Plaintiff his "<u>Miranda</u> rights."  Compl. ¶¶ 16, 28, 36.  In support of same, Plaintiff invokes both the Fifth and Fourteenth Amendments.  <u>See</u> id. ¶¶ 28, 36.  As County Defendants correctly point out, Plaintiff's claims, insofar as he seeks redress under the Fifth Amendment, must be dismissed because Plaintiff has not named as a defendant any agency or employee of the United States.  It is true that "[t]he Fifth Amendment, like all the other guaranties in the first eight amendments, applies only to proceedings by the Federal Government[.]"  <u>United States v. Ng</u>,  699 F.2d 63, 69 (2d Cir. 1983).  However, the Fifth Amendment's guaranty of the right against self incrimination applies to the states through the Due Process Clause of the Fourteenth Amendment, <u>see</u> <u>Floyd v. Meachum</u>, 907 F.2d 347, 354 (2d Cir. 1990) (<u>citing</u> <u>Malloy v. Hogan</u>, 378 U.S. 1, 84 S.Ct. 1489 (1964)).  Regardless, Plaintiff's claim under <u>Miranda</u> is unfounded and must be dismissed.

In <u>Miranda v. Arizona</u>, the Supreme Court held

> that the police may not interrogate a suspect in custody unless that person is 'warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.'

<u>Anderson v. Corcoran</u>, No. 05-Civ.-436, 2007 WL 1288539, at *4 (S.D.N.Y. May 2, 2007) (quoting <u>Miranda v Arizona</u>, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1630 (1966); accord <u>Dickerson v. United States</u>, 530 U.S. 428, 443-44, 120 S.Ct. 2326, 2336 (2000) (reaffirming <u>Miranda</u>)).  Accordingly, it is clear that "<u>Miranda</u>'s warning and waiver requirements apply *only* in the context of 'custodial interrogation,' i.e., a person must have been both in custody and subjected to interrogation for statements made without warnings or waiver to be inadmissible ... ."  <u>United States v. Rommy</u>, 506 F.3d 108, 131-132 (2d Cir. 2007) (citing <u>Miranda</u>, 384 U.S. at 444, 86 S.Ct. 1602; accord <u>United States v. Newton</u>, 369 F.3d 659, 669 (2d Cir.2004)) (emphasis added).  Plaintiff's complaint is devoid of any allegation that Defendants initiated any questioning of Plaintiff after he was taken into custody.  Accordingly, any such cause of action for a violation of Plaintiff's right against self incrimination is dismissed for failure to state a claim upon which relief may be granted.

### 3.  Fourth Amendment

The City and County Defendants argue that Plaintiff's claims under the Fourth Amendment must be dismissed.  The County Defendants argue that because the Complaint reflects that no member of the Onondaga County Sheriff's Office (1) was present at Plaintiff's arrest, (2) engaged in any act of force against

Plaintiff, or (3) detained Plaintiff with any knowledge that such detention was improper, Plaintiff cannot state a Fourth Amendment claim against them.  The City Defendants argue that because the officers had probable cause to arrest Plaintiff, the Fourth Amendment claims against them must be dismissed.

Plaintiff complains of a myriad of acts or omissions by Defendants, which the court interprets as claims that Plaintiff's rights were violated under the Fourth Amendment in the following ways:  excessive force, false arrest and false imprisonment, failure to intervene, and unreasonable search.  Each claim will be addressed in turn.

### a.  *Excessive Force*

According to Plaintiff, in the course of his arrest, he was handcuffed and "literally dragged" to the elevator by "the Detective," and "Defendants" escorted Plaintiff through the hallway of his apartment building, giving him "little pushes ... "here and there."  Compl. ¶ 16.  When evaluating an excessive force claim under the Fourth Amendment, "courts should examine whether the use of force is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation.'"  Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (quoting Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 (1989)).  Courts are to measure the reasonableness of the use of force by considering "the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." Id. (quoting Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999)).

Here, considering all of the circumstances as alleged by Plaintiff, the use of force by the officers in the course of Plaintiff's arrest does not rise to the level of a

17

Fourth Amendment violation.  To begin with, "[r]outine handcuffing at the time of an arrest, absent something more, cannot constitute a cognizable excessive force claim.  Frequently, a reasonable arrest involves handcuffing the suspect, and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out."  Gil v. County of Suffolk, — F.Supp.2d —, 2008 WL 4866036, at *9 (E.D.N.Y. 2008) (internal citations an quotations omitted).  In deciding whether something beyond a routine handcuffing is at issue in this case, the court finds it instructive that "the reasonableness of a handcuffing is dependent on whether the handcuffs were unreasonably tight, whether the arrestee's pleas to that effect were ignored, and the degree of injury to the arrestee's wrists."  Fifield v. Barrancotta, 545 F.Supp.2d 307, 311 (W.D.N.Y. 2008) (citing Esmont v. City of New York, 371 F.Supp.2d 202, 214 (E.D.N.Y. 2005).  Here, Plaintiff implies that he received some type of injury to his wrists, noting that "it has been 5 months so they healed."  Pl.'s Mem. of Law in Opp'n to City Defs.' Mot. for J. on the Pleadings, at 120.  However, Plaintiff very clearly states, regarding his allegation that he was "literally dragged" from his apartment to the elevator, that "he did not sustain any serious injuries ... ."  This, coupled with the absence of any allegations regarding the tightness of the handcuffs, whether Plaintiff was in pain, and if so, whether he communicated his pain to the officers, leads to the conclusion that Plaintiff fails to state a claim against the City Defendants for excessive force.  Accordingly, said claim is dismissed.

Moreover, it is clear from a reading of the Complaint that no County employee or official was involved in Plaintiff's arrest, and that no one used force against Plaintiff after the arrest.  Therefore, to the extent Plaintiff alleges an excessive force claim against the County Defendants, said claim is also dismissed.

### *b.  False Arrest and Imprisonment*

A claim for false arrest or false imprisonment, which terms are synonymous under New York law, is evaluated pursuant to the Fourth Amendment right to be free from unreasonable searches and seizures.  See Smith v. City of New York, 388 F.Supp.2d 179, 184 (S.D.N.Y. 2005) (citing Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992)).  The elements of such a claim, whether brought under § 1983 or New York common law, are as follows: "(1) the defendant intentionally confined the plaintiff; (2) the plaintiff was aware of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged."  Id. (citing Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994).  "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest[.]"  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal citation and quotation omitted).  However, under New York law, a warrantless arrest raises a rebuttable presumption that the arrest is unlawful.  See Curry v. City of Syracuse, 316 F.3d 324, 335 (2d Cir. 2003).

According to the City Defendants, they can rebut such a presumption by proving that Plaintiff's arrest was authorized by section 140.10 of the New York Criminal Procedure Law, "which lays out the requirement of reasonable cause for warrantless arrests."  Mem. of Law in Supp. of Mot. for J. on the Pleadings, at 10, Dkt. No. 37, citing Raysor v. Port Authority of New York and New Jersey, 768 F.2d 34, 40 (2d Cir. 1985).  Raysor, however, is clearly distinguishable as the plaintiff in that case was arrested at a Port Authority police station in the World Trade Center, while Plaintiff here was arrested in his home.  See Raysor, 768 F.2d at 36-37.  The Supreme Court has held that "warrantless arrests when the arrestee is in the sanctity of his home" violate the Fourth Amendment.  United States v.

19

Spencer, 684 F.2d 220, 222-223 (2d Cir. 1982) (citing Payton v. New York, 445 U.S.573, 602-03, 100 S.Ct. 1371, 1388 (1980)).  Exceptions to the Payton rule allow a warrantless arrest in the home where there is probable plus exigent circumstances, see Kirk v. Louisiana, 536 U.S. 635, 638, 122 S.Ct. 2458, 2459 (2002), or where the entry is consensual, see Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 2797 (1990).

To be sure, the factors surrounding Plaintiff's arrest hardly support a finding of exigent circumstances.  The Supreme Court has stated that

> the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.  Indeed, the Court has recognized only a few such emergency conditions, see, e.g., United States v. Santana, 427 U.S. 38, 42-43, 96 S.Ct. 2406, 2409-2410 (1976) (hot pursuit of a fleeing felon); Warden v. Hayden, 387 U.S. 294, 298-299, 87 S.Ct. 1642, 1645-1646 (1967) (same); Schmerber v. California, 384 U.S. 757, 770-771, 86 S.Ct. 1826, 1835-1836 (1966) (destruction of evidence); Michigan v. Tyler, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949 (1978) (ongoing fire), and has actually applied only the "hot pursuit" doctrine to arrests in the home, see Santana, supra.

Welsh v. Wisconsin, 466 U.S. 740, 749-750, 104 S.Ct. 2091, 2097-2098 (1984). The Court went on to explain their "hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor."  Id., at 750, 104 S.Ct. at 2098.  Here, defendant officers arrested Plaintiff on a misdemeanor aggravated harassment charge, based upon a statement provided by the alleged victim four days prior.  Accordingly, because the requisite exigent circumstances are lacking, the City Defendants cannot establish a legal arrest under that exception to the Payton Rule.

Nonetheless, it appears from Plaintiff's allegations that he did consent to the officers' entry.  Plaintiff claims that he "did not really give the consent to enter because [he] was under the impression that the [C]ity [D]efendants . . . were coming to update [him on another matter]."  Pl.'s Mem. of Law in Opp'n to City Defs.' Mot. for J. on the Pleadings, at 12, Dkt. No. 64.  Consent under false pretenses, absent outright fraud, such as where a police officer falsely claims to have a warrant in order to gain entry, is still consent.  Cf. Breitbard v. Mitchell, 390 F.Supp.2d 237, 248 (E.D.N.Y. 2005) (quoting Hadley v. Williams, 368 F.3d 747, 749 (7th Cir. 2004) ("Though 'the law permits police to pressure and cajole, conceal material facts, and actively mislead, it draws the line at outright fraud.'").  Accordingly, regardless whether Plaintiff was under a false impression regarding the purpose of the officers' visit due to misleading statements by the officers, or a simple misunderstanding on Plaintiff's part, he nonetheless consented to their entry, eliminating the requirement for a warrant.

Having overcome the presumption that Plaintiff's warrantless arrest was unlawful, the City Defendants must still establish that probable cause existed for the arrest.  "Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested."  United States v. Valentine, 539 F.3d 88, 93 (2d Cir. 2008).  Pursuant to section 240.30 of the New York Penal Law, in relevant part,

> [a] person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she:
> []Either (a) communicates with a person, anonymously or otherwise,

> by telephone, by telegraph, or by mail, or by transmitting or
> delivering any other form of written communication, in a manner
> likely to cause annoyance or alarm[.]

N.Y. PENAL LAW § 240.30(1) (McKinney 2008).  Less severe circumstances than those present in this case have led to a finding of probable cause to arrest on such a charge.  The Second Circuit affirmed a lower court dismissal of a false arrest claim, finding probable cause to arrest for second degree aggravated harassment where, according to admissions in the complaint, after plaintiff's "agitation had grown to anger" he attempted to contact defendant by leaving messages for her "about her evident lack of consideration and disrespect." Silver v. Kuehbeck, 217 Fed. Appx. 18, 22 (2d Cir. 2007).  A district court found probable cause to exist on a claim for second degree aggravated harassment where in an isolated incident, plaintiff sent audio tapes of conversations between his son and a woman with whom his son had a romantic relationship to the woman's subsequent fiancé as well as a member of her family.  See Quinn v. City of New York, No. 99-CV-7068, 2003 WL 1090205, at *1 (E.D.N.Y. Mar. 12, 2003).  The court in Quinn determined that it was reasonable for the arresting officer to conclude that the tapes were sent to embarrass and harass plaintiff's son's former girlfriend, and to annoy and alarm the former girlfriend's fiancé and family.  See id., at *4.  The court further noted that the requisite communication under § 240.30 does not have to include repetitive or continuous behavior.  See id.

Here, Mr. Bebber reports receiving repeated unwanted written and verbal communications from Plaintiff, wherein Plaintiff told Bebber that he "needed to find God and that [he] was a Devil worship[]er."  Ex. A to Mem. of Law in Supp. of Mot. for J. on the Pleadings, Dkt. No. 39.  Bebber also claims that these

22

communications persisted, despite Plaintiff having been twice contacted by police regarding the matter, and that the communications caused Bebber and his wife to be "annoyed and alarmed." Id.  Under these set of facts, it is clear the officers had probable cause to arrest Plaintiff for second degree aggravated harassment.[4] Accordingly, Plaintiff's claim for false arrest against Defendants is dismissed.

Further, the only allegations in the Complaint which implicate the City Defendants and the SHA Defendants are those allegations regarding Plaintiff's claims of excessive force and false arrest.  Accordingly, those defendants are dismissed from this action.  It should be noted that although the SHA Defendants have not made a motion to dismiss this action as against them, the court may sua sponte dismiss claims against a non-moving defendant in the interest of judicial economy.  See Hollander v. Copacabana Nightclub, — F.Supp.2d —, 2008 WL 4449429, at *7 (S.D.N.Y. 2008) (citing Perez v. Ortiz, 849 F.2d 793, 797 (2d Cir.1988); Leonhard v. United States, 633 F.2d 599, 609 n. 11 (2d Cir.1980) ("The district court has the power to dismiss a complaint sua sponte for failure to state a claim.")).

### c.  Failure to Intervene

County Defendants address a claim by Plaintiff for failure to intervene to protect against the infringement of Plaintiff's constitutional rights under the Fourth Amendment in the context of his claim for false arrest and imprisonment.

---

[4]  The court is constrained to express its curiosity regarding the claim included in the misdemeanor information, signed by the arresting officer, that through the notice of trespass letter which was sent to Mr. Bebber, Plaintiff "purport[ed] to be a representative of Syracuse Housing Authority when in fact he is not."  Ex. A to Mem. of Law in Supp. of Mot. for J. on the Pleadings, Dkt. No. 39.  Despite the dubious relevance of said claim to the charge of second degree aggravated harassment, a fair reading of the referenced notice of trespass letter reveals no such representation by Plaintiff.

However, because the court has deemed the arrest lawful under the Fourth Amendment, and consequently dismissed the false arrest claim, to the extent Plaintiff claims a failure to intervene to prevent his false arrest or imprisonment, such a claim is likewise dismissed.

### d.  Unreasonable Search

The court interprets the Complaint to allege a claim against the County Defendants for an unreasonable search under the Fourth Amendment.  Plaintiff alleges that he was subjected to a strip search after his admission to the Justice Center.  According to the law in this circuit, "persons charged with a misdemeanor and remanded to a local correctional facility . . . have a right to be free of a strip search absent reasonable suspicion that they are carrying contraband or weapons[.]"  Shain v. Ellison,  273 F.3d 56, 66 (2d Cir. 2001).  See also Iqbal, 490 F.3d at 172.  After explaining that, "[u]nlike persons already in jail who receive contact visits, arrestees do not ordinarily have notice that they are about to be arrested and thus an opportunity to hide something[,]" the Second Circuit noted that "a person who is allowed to visit the bathroom unescorted before an arrest" would be an exception where "reasonable suspicion may well exist."  Shain, 273 F.3d at 64.  Where a detainee was strip searched after being arrested for a misdemeanor, and where the nature of the charge had nothing to do with drugs or weapons, reasonable suspicion was found to be lacking even though the detainee appeared to be under the influence of alcohol.  See Dodge v. County of Orange, 282 F.Supp.2d 41, 59-60 (S.D.N.Y. 2003).  Here, according to the allegations in the Complaint as well as the arrest report, including Mr. Bebber's statement in support of Plaintiff's arrest, none of the circumstances surrounding Plaintiff's arrest or the underlying charge would warrant a reasonable suspicion that Plaintiff

24

was carrying contraband or weapons at the time he was strip searched by the officers at the Justice Center.  For this reason, the court is not able to conclude that Plaintiff has failed to state a Fourth Amendment claim against the individually named County Defendants, John Does.  Accordingly, the County Defendants' motion to dismiss the Complaint is denied in this regard.

### *4.  Deliberate Indifference*
#### *a. Failure to Protect*

The court also interprets Plaintiff's papers to allege facts in support of a claim that County Defendants failed to protect him from harm while in custody at the Justice Center.  According to the Complaint, Plaintiff was placed in a group cell at the Justice Center, wherein he witnessed one prisoner assault another, while "[t]he County Jail officers [] watch[ed] without any reaction."  Compl. ¶ 18.  After the assault ended, the assailant was removed from the cell, but before the assailant was removed, he "asked Plaintiff if he had panties."  Id.  In his papers in opposition to the County Defendants' motion to dismiss, Plaintiff alleges that he was subjected to "unwanted sexual contact and/or assault" when he was placed in the group cell, and that the "officers from [the] County jail . . . did not exercise their affirmative duty to protect the constitutional rights of citizens from infringement . . . premised on the official presence and realistic opportunity to intervene to prevent harm from occurring."  Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss, at 14-15, Dkt. No. 20.

The Due Process Clause of the Fourteenth Amendment protects pre-trial detainees, such as Plaintiff here, against intolerable prison conditions.  See Patrick v. Amicucci, No. 05-Civ.-5206, 2007 WL 840124, at *3 (S.D.N.Y. Mar.19, 2007) (citing Weyant, 101 F.3d at 856).  The failure to protect a pre-trial detainee from

harm is one type of intolerable prison condition.  Thus, a prison official's deliberate indifference to a substantial risk of serious harm to an inmate may form the basis of a deliberate indifference claim.  See id..  However, where, as here, the plaintiff does not allege that he was assaulted or threatened by other inmates, or where plaintiff only alleges that he was in fear of an assault, a claim for failure to protect must be dismissed.  See Chalif v. Spitzer, No. 9:05-CV-1355, 2008 WL 1848650, at *9 (N.D.N.Y. Apr. 23, 2008) (citing Dawes v. Walker, 239 F.3d 489, 494 (2d Cir. 2001) (overruled on other grounds); Bolton v. Goord, 992 F.Supp. 604, 627 (S.D.N.Y. 1998)).  Here, while Plaintiff alleges that an assault took place in his presence while County Defendant officers watched, and that the assailant asked Plaintiff "if he had panties" which caused Plaintiff to fear for his safety, there is no allegation that Plaintiff was assaulted.  Moreover, according to Plaintiff, the assailant was removed from the group cell after the assault, eliminating whatever risk of harm existed.  Accordingly, to the extent Plaintiff claims that County Defendants failed to protect him in violation of his Due Process rights, said claim is dismissed.

### b.  Failure to Provide Medical Care

Also included in the Complaint are allegations that during his incarceration at the Justice Center, Plaintiff had a bruised rib, was in pain, and was not given Tylenol with Codeine or his other medication.  See Compl. ¶ 17.  Plaintiff alleges that "[e]xcept one person, nobody addressed [his] medical concerns."  Compl.  ¶ 21.

Where a pre-trial detainee alleges deliberate indifference to a medical need while incarcerated, such a claim is evaluated under the Due Process Clause of the Fourteenth Amendment.  See Arac v. Bodek, 213 F.3d 625 (2d Cir. 2000) (citing

26

City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244-45, 103 S.Ct. 2979 (1983)).  While the exact standard to be applied to such a claim has not been made clear, what is known is that the pre-trial detainee's rights are at least as great as those provided to a convicted prisoner under the Eighth Amendment, see City of Revere, 463 U.S. at 244, and that something more than negligence on the part of the defendant is required, see Bryant v. Maffuci, 923 F.2d 979, 984 (2d Cir. 1991). Consequently, courts tend to apply the Eighth Amendment standard when deciding a pre-trial detainee's claim for deliberate indifference to a medical need under the Fourteenth Amendment.  See Lloyd v. Lee, 570 F.Supp.2d 556, 570 (S.D.N.Y. 2008).  See also Lara v. Bloomberg, No. 04-CV-8690, 2008 WL 123840, at *2 n.4 (S.D.N.Y. Jan. 8, 2008) (citing Cuoco v. Moritsuqu, 222 F.3d 99, 106 (2d Cir. 2000)).  Accordingly, in order for a pre-trial detainee to establish a claim for deliberate indifference to a medical need, a plaintiff must allege

> (1) a deprivation that is 'sufficiently serious,' i.e., a deprivation that presents a 'condition of urgency, one that may produce death, degeneration, or extreme pain,' Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994) (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting )), and (2) reckless indifference, that is, 'defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm[,]' Singleton v. Perilli, No. 03 Civ. 2271(DC), 2004 WL 74238, at *3 (S.D.N.Y. Jan. 16, 2004).

Lloyd, 570 F.Supp.2d at 566.

Here, to begin with, Plaintiff's allegation of a bruised rib does not satisfy the requirement of a sufficiently serious deprivation.  In one case, for example, even where the court assumed as true the plaintiff's allegation that he suffered "soreness, pain in and a lump behind his right ear, lump on the back of his head,

small abrasions on his nose and knuckle, and bruising to his back, ribs and legs," it nonetheless found that those injuries do not constitute the requisite "serious medical need" in order to satisfy the first prong of a deliberate indifference claim. Jones v. Furman, No. 02-CV-939F, 2007 WL 894218, at *10 (W.D.N.Y. Mar. 21, 2007) (citing Hemmings v. Gorczyk, 134 F.3d 104, 109 (2d Cir. 1998)).

However, even if Plaintiff were to satisfy the first element of his deliberate indifference claim, he still has failed to state such a claim because he admits that his medical concerns were in fact addressed by someone at the Justice Center. While Plaintiff alleges in the first instance that "his medical concerns were not addressed at all," in the very next sentence he claims "[e]xcept one person, nobody addressed [his] medical concerns."  Compl. ¶ 21.  Accordingly, because Plaintiff's alleged injury is not sufficiently serious, and because he alleges that his medical concerns were addressed by at least one person, he fails to state a claim against Defendants for deliberate indifference to a medical need.

### c.  Deprivation of Food

Next, while Plaintiff claims "[h]e was held without drink and food, ¶ 19, he also claims he was given breakfast the morning following his initial detention, see ¶ 22.  Courts have found a constitutional violation where an inmate has suffered "[s]ubstantial deprivation of nutritionally adequate food . . . if the food is served in a fashion that presents an immediate danger to the inmate's health or well-being." Beckford v. Portuondo, 151 F.Supp.2d 204, 213 (N.D.N.Y. 2001) (internal quotation and citation omitted).  Where a prisoner is deprived of two of three meals served regularly each day, a constitutional violation may exist if that one meal is nutritionally inadequate.  See id.  Here, Plaintiff was incarcerated after his arrest at 5:35 p.m.  See Ex. A to Mem. of Law in Supp. of Mot. for J. on the

Pleadings, Dkt. No. 39.  Thus, the fact that he received no food or drink until the following morning does not establish a constitutional violation.  Accordingly, to the extent Plaintiff claims his due process rights were violated by the deprivation of food and water, said claim is dismissed.

### B.  Claims Against Onondaga County Sheriff's Office; Onondaga County Justice Center; and Syracuse City Police Department

The County Defendants argue that the Onondaga County Sheriff's Office and the Onondaga County Justice Center, which is a facility operated by the Sheriff's Office, are not proper defendants, but that "the real party in interest is the municipality County of Onondaga."  Mem. of Law in Supp. of Mot. to Dismiss, at 3, Dkt. No. 16.  The City Defendants, while not directly addressing the issue, assume that the City of Syracuse is a defendant.  See Mem. of Law in Supp. of Mot. for J. on the Pleadings, at 8, Dkt. No. 37.  It is important to note that an administrative arm of a municipality, such as SPD or the Onondaga County Sheriff's Office, "cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity."  Leland v. Moran, 100 F.Supp.2d 140, 145 (N.D.N.Y. 2000) (internal quotation omitted). See also Clayton v. City of Kingston, 44 F.Supp.2d 177, 183 (N.D.N.Y. 1999). Accordingly, all claims against the Onondaga County Sheriff's Office, the Onondaga County Justice Center, which is a facility operated by the Sheriff's Office, and SPD are dismissed.  However, because of the City and County Defendants' assertions that the City of Syracuse ("the City") and County of Onondaga ("the County") are the proper parties, and the court's duty to liberally construe Plaintiff's papers due to his pro se status, the court will consider the Complaint to include claims against the City and County.

29

Although Plaintiff insists that the municipal defendants are liable for the actions of their employees under the doctrine of respondeat superior, the law is clear that a municipal entity may not liable pursuant to § 1983 under the theory of respondeat superior, but may be only liable where its employee acted pursuant to an official policy, custom, or practice of said entity.  See Monell v. Dep't of Soc. Serv. of the City of New York, 436 U.S. 658, 694-95, 98 S.Ct. 2018, 2037-38 (1978); Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990). Such a policy, custom or practice may "be inferred where the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction."  Patterson, 375 F.3d at 226 (quoting Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir. 1996)) (internal quotation marks omitted).

To be sure, "where a Monell claim is based solely on the actions of a municipality's officers, municipal liability cannot exist if the individual defendants have not violated the plaintiff's constitutional rights."  Matican v. City of New York, 424 F.Supp.2d 497, 508 (E.D.N.Y. 2006) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571 (1986)).  Accordingly, because the claims here against the City employees have been dismissed, it follows that any Monell claim against the City is likewise dismissed.

For its part, the County Defendants argue that Plaintiff fails to properly plead a Monell claim against the County.  The County argues that Plaintiff fails to allege the existence of a policy or custom that led to any constitutional deprivation he suffered, and that he fails to allege any facts to support an inference of a such a policy or custom.

The Supreme Court has held that no heightened pleading standard should be

30

applied to § 1983 actions alleging claims for municipal liability under <u>Monell</u>. <u>See</u> <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 113 S.Ct. 1160 (1993).  The Court in <u>Leatherman</u> reiterated, in accordance with <u>Conley v. Gibson</u>, 355 U.S. 41, 78 S.Ct. 99 (1957) that under Rule 8, all that is required is "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  <u>Leatherman</u>, 507 U.S. at 168, 113 S.Ct. at 1163 (<u>quoting</u> <u>Conley</u>, 355 U.S. at 47, 78 S.Ct. at 103) (internal quotations omitted).[5]  The Second Circuit has evolved from its requirement that "a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights[,]" <u>Alfaro Motors, Inc. v. Ward</u>, 814 F.2d 883, 887 (2d Cir. 1987), to the post-<u>Leatherman</u> conclusion that "the court may not go beyond FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference.  Whether the plaintiff can produce evidence to create a genuine issue with regard to his allegation is to be resolved through a motion for summary judgment[,]" <u>Phelps v. Kapnolas</u>, 308 F.3d 180, 186-87 (2d Cir. 2002).  In <u>Phelps</u>, on an Eighth Amendment claim against prison officials for deliberate indifference, the court found that the mere allegation of an official's knowledge of a substantial risk to the plaintiff's safety was enough to set forth the subjective element of said claim.  <u>See</u> <u>id.</u> at 186.  It is clear from the language of that opinion that a plaintiff need not plead facts to support allegations

---

[5] Abrogated on other grounds by <u>Bell Atlantic v. Twombly</u>, — U.S. —, 127 S.Ct. 1955 (2007).  To be sure, the Court in <u>Bell Atlantic</u>, while rejecting <u>Conley</u>'s "no set of facts" language, nonetheless favorably cited the "fair notice" language cited here.  <u>See</u> 127 S.Ct. at 1964.

of constitutional violations beyond what is required by Rule 8.  See id.  See also

Hernandez v. Goord, 312 F.Supp.2d 537, 544-45 (S.D.N.Y. 2004).  Regarding

Monell claims in particular, "[t]he pleading requirement for a § 1983 claim against

a municipality will be met if a plaintiff alleges that 'a formal policy which is

officially endorsed by the municipality' caused the plaintiff's injuries."  Perez v.

Westchester County Dep't of Corrs., No. 05-Civ.-8120, 2007 WL 1288579, at *5

(S.D.N.Y. Apr. 30, 2007) (quoting Moray v. City of Yonkers, 924 F.Supp. 8, 12

(S.D.N.Y. 1996) (citing Monell, 436 U.S. at 690))).  Even where allegations in the

complaint of the existence of an official policy are not buttressed by supporting

facts, dismissal is not warranted as long as the defendant has "fair notice of what

the plaintiff's claim is and the grounds upon which it rests[,]" Nesbitt v. County of

Nassau, No. 05-CV-5513, 2006 WL 3511377, at *4 (E.D.N.Y. Dec. 6, 2006)

(quoting Conley, 355 U.S. at 474, 78 S.Ct. 99).  "It is up to the 'liberal discovery

rules and summary judgment motions to define disputed facts and issues and to

dispose of unmeritorious claims.'"  Id. (quoting Swierkiewicz v. Sorema N.A., 534

U.S. 506, 512, 122 S.Ct. 992 (2002) and citing Leatherman, 507 U.S. at 168-69).

See also Conley, 355 U.S. at 47-48, 78 S.Ct. at 103 ("Such simplified 'notice

pleading' is made possible by the liberal opportunity for discovery and the other

pretrial procedures established by the Rules to disclose more precisely the basis of

both claim and defense and to define more narrowly the disputed facts and

issues.").

        Here, to be sure, Plaintiff alleges that Chief Miguel "has been and still is

responsible for the promulgation, and implementation of police procedures and

practices among police officer of [SPD], sued herein as John Does, which officers

include members of the Onondaga County Sheriff's Office ... ."  Compl. ¶ 51.

Construing such an allegation liberally, as it must, the court determines that Plaintiff contends that both City and County Defendants have policies or procedures pursuant to which their employees carry out their duties.  Because this allegation puts the County on notice of Plaintiff's Monell claim, the County's motion to dismiss in that regard is denied.  However, it should be noted that the Monell claim is limited to the sole remaining Fourth Amendment claim regarding the alleged unlawful strip search.

Finally, the court notes that the County Defendants correctly argue that municipalities, and municipal employees sued in their official capacities, are not liable for punitive damages, and accordingly, any claims for punitive damages against the County or any County employee sued in his official capacity, are dismissed.  See Jefferson v. City of Tarrant, Ala.,  522 U.S. 75, 118 S.Ct. 481, 482 (1997) (citing Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748 (1981)); Ivani Contracting Corp. v. City of New York,  103 F.3d 257, 262 (2d Cir. 1997) (citing Brandon v. Holt, 469 U.S. 464, 471-73, 105 S.Ct. 873, 877-79, (1985)).

### C.  State Common Law Claims

Plaintiff's claims for negligence, negligent infliction of emotional distress and intentional infliction of emotional distress remain for consideration.  County Defendants argue that Plaintiff's state law claims must be dismissed because he has failed to file a notice of claim as is required under New York's General Municipal Law.  See N.Y. GEN. MUN. LAW § 50-e (McKinney).  It is true that "[a]s a condition precedent to commencing a tort action against New York municipalities, or any of their officers, agents, or employees, New York General Municipal Law section 50-e requires plaintiffs to file a notice of claim within

33

ninety days after the claim arises." <u>Olsen v. County of Nassau</u>, No. CV-05-3623, 2008 WL 4838705, at *1 (E.D.N.Y. Nov. 4, 2008).  Further, while Plaintiff may seek permission to file a late notice of claim, he must do so in state court. <u>See</u> <u>Olsen</u>, 2008 WL 4838705, at *3 (citing New York General Municipal Law § 50-e(5)(7)).  Accordingly, Plaintiff's state law claims must be dismissed without prejudice on this basis.  Nonetheless, the court is constrained to note that even if Plaintiff had filed a timely notice of claim, his negligence and NIED claims fail, and therefore are dismissed on the merits.

In New York, in order to establish a claim of negligence, Plaintiff must prove (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." <u>Muller-Paisner v.</u> <u>TIAA</u>, 289 Fed.Appx. 461, 465 (2d Cir. 2008) (internal quotation omitted).  Here, Plaintiff fails to allege that he suffered a physical injury as a result of the County Defendants' action or inaction.  Plaintiff alleges only emotional damages. Accordingly, the court must evaluate Plaintiff's claim as solely a claim for negligent infliction of emotional distress ("NIED").  <u>See</u> <u>Stephens v. Shuttle</u> <u>Associates, L.L.C.</u>,  547 F.Supp.2d 269, 275 (S.D.N.Y. 2008).

In his papers in opposition to the County Defendants' motion to dismiss, Plaintiff contends that he claims liability on his NIED cause of action under both the bystander and direct duty theories and that Plaintiff "found himself [at] risk of bodily harm resulting from really possible assault and/or rape."  Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss, at 16, Dkt. No. 20.

A plaintiff who alleges that he suffered emotional harm due to a defendant's negligence may recover on a claim for NIED in New York under either a "bystander theory," meaning the plaintiff was "a bystander who was in the zone of

danger [and] suffers emotional trauma as a result of [his] observations," or a "direct duty theory," meaning "the defendant breach[d] a direct duty to [the] plaintiff which results in emotional injury to the plaintiff." Stephens,  547 F.Supp.2d at 275.  In order to recover under the bystander theory, however, a plaintiff must prove that he witnessed "the death or serious bodily injury of a member of [his] immediate family" which clearly has not been alleged by Plaintiff in this case. Id.  Accordingly, Plaintiff's only chance for recovery here would be under the direct duty theory, wherein "a plaintiff suffers an emotional injury from defendant's breach of a duty which unreasonably endangered [plaintiff's] own physical safety." Id., at 275-276.  Nonetheless, "[t]he duty in such cases must be specific to the plaintiff and not some amorphous, free-floating duty to society." Id.  Moreover, where a plaintiff "has not established that his physical safety was ever threatened or endangered by defendants, he cannot recover under either [the direct duty theory or bystander] theory." Id. (quoting Danielak v. City of New York, No. 02 Civ. 2349, 2005 WL 2347095, at *18 (E.D.N.Y. Sept.26, 2005).

Plaintiff's allegation regarding the threat to his physical safety is exceptionally dubious.  Essentially, Plaintiff claims that the John Doe defendants, officers at the Justice Center, stood by and watched while two other inmates who occupied the same group cell as Plaintiff engaged in a physical altercation. Thereafter, Plaintiff alleges the officers removed the assailant from the group cell, but not before the assailant asked Plaintiff is he was wearing panties.  From this sequence of events, Plaintiff concludes that he was at "risk of bodily harm resulting from really possible assault or/and rape."  Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss, at 16, Dkt. No. 20.  Based the aforementioned allegations, Plaintiff has failed to plead the requisite unreasonable endangerment to his

35

physical safety in order for his NIED claim to go forward.  Accordingly, even if Plaintiff had filed a timely notice of claim, the County Defendants' motion to dismiss his negligence and NIED claims must nonetheless be granted on the merits.

Such is not the case for Plaintiff's IIED claim against the John Doe County Defendants.[6]  "To state a claim for IIED under New York law, [a] plaintiff must plead the following four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal relationship between the conduct and the resulting injury; and (4) severe emotional distress."  Davey v. Jones, 2007 WL 1378428, at * 3 (S.D.N.Y.2007) (citing Bender v. City of New York, 78 F.3d 787, 790 (2d Cir.1996)).

As to the first element, New York courts impose a heavy burden on the plaintiff such that "the alleged conduct must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  Davey, 2007 WL 1378428, at *3 (internal citations and quotations omitted).  The Second Circuit has noted that New York state courts have sustained IIED claims where there is "some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy."  Stuto v. Fleishman, 164 F.3d 820, 828 (2d Cir. 1999).  When evaluating IIED claims regarding an unlawful

---

[6] Plaintiff's IIED claim against the County must fail, as it is "well-settled that public policy bars claims sounding in intentional infliction of emotional distress against a government entity."  Rivera v. City of New York, 392 F.Supp.2d 644, 657 (S.D.N.Y. 2005) (quoting Lauer v. City of New York, 659 N.Y.S.2d 57, 58 (App. Div. 1997)).

strip search, most district courts in this circuit have followed suit, allowing the claim to go forward where some other circumstance existed in combination with the unlawful search.  See, e.g. Jean-Laurent v. Hennessy, No. 05-CV-1155, 2008 WL 3049875, at *20 (E.D.N.Y. Aug. 1, 2008) (denying summary judgment on an IIED claim where questions of fact existed regarding whether the plaintiff was slammed against a car and strip searched in public without justification); Travis v. Village of Dobbs Ferry, 355 F.Supp.2d 740, 756 (S.D.N.Y. 2005) (denying summary judgment on IIED claim where defendants lacked probable cause for the arrest, and accordingly, the strip search incident to the arrest was also unlawful, but where the court also found the facts of the case were outrageous in that the arrest essentially was based on a hunch that plaintiff was in possession of illegal drugs, and the strip search was conducted in order to corroborate said hunch); Meja v. City of New York, 119 F.Supp.2d 232, 286 (E.D.N.Y. 2000) (denying summary judgment on IIED claim where questions of fact remained regarding whether strip search was justified and whether ethnic slurs were used by defendant during plaintiff's arrest).  However, one district court in this circuit denied a defendant's motion for summary judgment on plaintiff's IIED claim where there was a question of fact regarding whether the plaintiff was subjected to a strip search without probable cause, but where none of the other aforementioned circumstances were present.  See Caceres v. Port Authority of New York and New Jersey, No. 06-Civ.-1558, 2008 WL 4386851, at *13 (S.D.N.Y. Sept. 24, 2008) (finding that "subjecting [a] plaintiff to a strip search without probable cause for such an intrusive search could be considered extreme and outrageous").

　　At this stage of the litigation the court is unable to determine whether Plaintiff's strip search was lawful, and it appears that an unlawful strip search,

without more, may be considered extreme and outrageous conduct.  Accordingly,
should Plaintiff be granted leave in state court to file a late notice of claim, the
court would, based on the allegations in the Complaint, deny the County
Defendants' motion to dismiss insofar as Plaintiff states an IIED claim against the
John Doe County Defendants.  Accordingly, Plaintiff's claim of IIED against the
John Doe County Defendants is dismissed without prejudice to renew upon the
filing of a notice of claim pursuant to  New York General Municipal Law section
50-e.

   Regarding the City Defendants and SHA Defendants, because the federal
civil rights claims against them, of which the court had original jurisdiction, have
been dismissed in their entirety, the court may dismiss the remaining state law
claims against them due to the lack of diversity jurisdiction.  See Weinraub v.
Glen Rauch Securities, Inc., 399 F.Supp.2d 454, 464 (S.D.N.Y. 2005) (citing 28
U.S.C. § 1367(c)(3); Martinez v. Simonetti, 202 F.3d 625, 636 (2d Cir.2000)).
Nonetheless, because there are no allegations in the Complaint sufficient to state a
claim for negligence, NIED or IIED against the City Defendants or SHA
Defendants, those claims are dismissed against said defendants with prejudice.

### *VI.  Conclusion*

   In accordance with the foregoing discussion of the pending motions, it is
hereby

   ORDERED that the motion for judgment on the pleadings by defendants,
City of Syracuse; Syracuse City Police Department; Gary Miguel, Chief of Police,
Syracuse City Police Department; and John Does, see Dkt. No. 37, is GRANTED,
and it is further

   ORDERED that all claims against defendants, City of Syracuse; Syracuse

38

City Police Department; Gary Miguel, Chief of Police, Syracuse City Police Department; and John Does are DISMISSED; and it is further

ORDERED that all claims against defendants Syracuse Housing Authority Security and John Doe, Syracuse Housing Authority Detective, are sua sponte DISMISSED; and it is further

ORDERED that the motion to dismiss for failure to state claims upon which relief may be granted by defendants County of Onondaga, Onondaga County Sheriff's Office, Onondaga County Justice Center and John Does, see Dkt. No. 16, is GRANTED in part and DENIED in part, and it is further

ORDERED that the Clerk of the Court shall change the caption of this case to reflect the substitution of the County of Onondaga as a defendant for the Onondaga County Sheriff's Office and the Onondaga County Justice Center; and it is further

ORDERED that the Clerk of the Court shall close this case as to all defendants except the County of Onondaga and John Does; and it is further

ORDERED that Clerk of the Court shall serve a copy of this memorandum, decision and order upon plaintiff, Wlodzimierz J. Dzwonczyk, by regular mail.


IT IS SO ORDERED.

DATED:    December 18, 2008
          Syracuse, New York

Neal P. McCurn
Senior  U.S. District Judge

39